FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 0 1 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Tracyee L. Fox

      Plaintiff,

      v.

MATTESON SCHOOL DISTRICT
#159 a/k/a ELEMENTARY SCHOOL
DISTRICT 159, BARBARA MASON,
SUPERINTENDENT and MELODY
ELLINGTON,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

12cv6055
Judge THARP
Magistrate FINNEGAN

**JURY DEMANDED**

## COMPLAINT

Plaintiff, TRAYCEE L. FOX , through her attorney, William D. Moore of the Law

Offices of William D. Moore, P.C., complains and states a cause of action against Defendants,

Elementary School District 159 a/k/a Matteson School District #159 (hereinafter, the School

District), Barbara Mason (hereinafter, Defendant Mason) and Melody Ellington (hereinafter,

Defendant Ellington), as follows:

### INTRODUCTORY STATEMENT

1. Plaintiff, TRAYCEE FOX, a black American, woman (hereinafter, Ms. Fox) seeks to

redress her claims for the discrimination she suffered, in violation of her rights under Title VII

of the Civil Rights, Act of 1964, 42 U.S.C. {2000, et.seq., for the maltreatment, harassment and

retaliation she suffered and endured, in violation of her rights under the anti-retaliation

provisions of the Illinois Whistleblower Act, 740 ILCS 174/1 et seq. ("Whistleblower Act"),

1

and for the harm she suffered in violation of her rights under the Common Law of the State of Illinois. Ms. Fox alleges that she was continuously and repeatedly caused to suffer in a hostile and intimidating work environment, which included, but was not limited to, name calling, abusive and disparate treatment, sexual harassment (unwanted touching and other lewd remarks and requests on the part of the School District's Board President – Elliot Johnson) and discharge from her employment at the School District, after Ms. Fox informed Defendants, Mason, Ellington, and Members of the School District's Board about a number of issues related to the apparent misappropriation of School District Funds, other malfeasance, and the sexual harassment. Ms. Fox seeks an award of back pay, damages for pain and suffering, punitive damages, and attorney fees.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. section 1331 and 1343 because matters and controversy arise under the Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. section {2000 et, seq. The Court has supplemental jurisdiction over related state law claims under 28 U.S.C. Section 136(a) because those claims arise out of the same case or controversy as the federal claims.

3. Venue is proper in this court under 28 U.S.C Section 1391(b) because the events that give rise to Plaintiff's claims took place in the Northern District of Illinois.

4. All conditions precedent to jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-5(f)(3) has occurred and or been compliment with, to wit: A charge of employment discrimination was filed with the Illinois Department of Human Rights and Equal

2

Employment Opportunity Commission within the within One Hundred Eighty (180) days of the commission of the unlawful employment practice; a notice of Right to Sue was received from the Equal Employment Opportunity Commission on or about May 4, 2012. This complaint has been filed within ninety(90) days of receipt of the Notice of Right to Sue. (**Exhibit A**).

### Parties

5.  Plaintiff, Traycee L. Fox is a resident of Cook County, Illinois, and was a resident of Cook County at the time of the events described herein.   She was as an employee (Payroll Clerk) of the School District, since October 2009.   She therefore satisfies the requirement of 42 U.S.C. {2003 (i) (f).

6.  Elementary School District 159, is a public school district in Cook County, Illinois.   Upon information and belief, the School District and each of its component schools are recipients of federal financial assistance.   The School District is a non-sectarian and is exempt from taxation.

In each of the twenty or more calendar weeks in the current or preceding year employed fifteen or more employees and therefore constitutes and employer as the term is used in 42 U.S.C. {2000 (e) (b). At all times relevant hereto, Plaintiff was employed by Elementary School District 159.

7.  Defendant, Barbara Mason, sued in both her official and individual capacities8 is the current

Superintendent of the School District.   Defendant, Mason, has been the School District

3

Superintendent at all times material hereto.

8.  Defendant, Melody Ellington, sued in her official capacity as the Business Manager of the School District and individually.


### Statement of Facts

### (Facts Common to All Counts)

9.  On or about May 2010, Plaintiff informed Defendant Mason about an apparent misappropriation of funds, by Pat Brewer, the assistant to Defendant Mason (and on information and belief, friend of Defendant Mason).   Ms. Fox told Mason that several unauthorized payments had been made to the Pat Brewer and her son.   Immediately thereafter, Pat Brewer was terminated as an employee of the School District (See **Exhibit B**).

10.   Over the next several months, including and leading up to June 2011, Ms. Fox, informed Defendants Mason and Ellington of other issues that she deemed to be an inappropriate use of District funds and other malfeasance.   Specifically, Ms. Fox alleges the following:

      a.  that on or about June 2010, Defendants Mason and Ellington, told Ms. Fox to endorse a check with the signature stamp of the former Board President, Ronald Wynn.   Ms. Fox states that she then informed Defendant, Ellington that she was uncomfortable with endorsing the check with the stamped signature of the former School District Superintendent.   Defendant Ellington responded by saying, "just do it."   Ms. Fox then complained to a School Board member, Demetria Brown, about the endorsement, and that Ms. Fox was told by Ms. Brown, not to endorse (stamp) the check.   After the incident Ms. Fox states that she was reprimanded

by Defendants Mason and Ellington, and that she was told by Defendant Mason, "Don't you ever undermine my authority again"

b. that on or about July 5, 2010, Defendant, Mason, contacted Ms. Fox and insisted that she process a check for the sister of one of the School District's Principals. Ms. Fox informed Defendant Mason that the employee had direct deposit and that a payroll check had already been deposited into the employee's account. Nevertheless, Defendant Mason ordered Ms. Fox to process another check for the employee. This caused the employee to receive an overpayment in payroll funds.

c. On or about February 8, 2011, Ms. Fox was given a spreadsheet from Defendant, Ellington to initiate a 2% increase for each district clerical employee. When Plaintiff received the spreadsheet, she noticed that Defendant, Ellington, had given her incorrect salaries for each employee. When Ms. Fox informed Defendant Ellington of the incorrect salaries, Defendant Ellington told Plaintiff to apply the 2% increase anyway. Subsequently, Ms. Fox had a conversation with Defendant Mason about the incorrect salaries. Defendant, Mason, told Ms. Fox that she was aware that Ms. Ellington's numbers were incorrect; however, that Ms. Fox should have processed the incorrect salaries, and "let Melody take the fall."

d. that on or about June 8, 2011, Ms. Fox, along with two other co-workers, had a conversation with Defendant Ellington regarding the existence of a beneficiary form for a deceased employee. Plaintiff informed Defendant, Ellington, that the form existed, and that upon decedent's death, the beneficiary form was missing

5

from the decedent's personnel file. Defendant, Ellington instructed Plaintiff and her co-workers not to concern themselves with the matter.

e.  that on or about June 15, 2011, Plaintiff sent an email to Defendant, Ellington, regarding auto allowances which were not to exceed $500.00. All administrators, pursuant to their employment agreement, were entitled to a $500.00 auto allowance, two times per fiscal year. Ms. Fox further alleges that notwithstanding the contract provision, Defendant, Ellington, grossed up (increased) the allowance which caused overpayment to the employees, including Defendant, Ellington. Ms. Fox expressed her concerns to Defendants and Mr. Johnson, regarding the incorrect payment amounts.

f.  that on or about June 29, 2011, Ms. Fox questioned Defendant, Ellington, about payroll changes that were made to the payroll, after Ms. Fox's sign-off. Defendant, Ellington responded to Ms. Fox by saying, "I made changes to the payroll, and I will give you the revised rates later." Ms. Fox never received the information from Defendant, Ellington.

11. Ms. Fox alleges that from the time that she began informing Defendants of matters related to the misuse of public funds and other documentation related issues, that Ms. Fox experienced a hostile and intimidating work environment, was deprived of work opportunities and was caused to suffer maltreatment from Defendants in the form of actions which, included but is not limited, to the following:

6

a.  public ridicule and humiliation in front of other co-workers, and a member of Ms. Fox's family;

b.  exclusion from meetings related to Ms. Fox's duties;

c.  diminished responsibilities and work duties;

d.  alienation from Defendants, in that Defendants failed to address Ms. Fox's repeated requests for meetings related to her duties at the School District, her concerns about the unfair treatment, and concerns about what she believed to be malfeasance;

e.  verbal abuse, in that Defendant, Ellington, repeatedly and on multiple occasions, called Ms. Fox, a "heifer" when she gave Ms. Fox various directives. On one occasion, Defendant, Ellington, called (referred to) Ms. Fox a "heifer" in the presence of co-worker, Nanette Woods; Ms. Fox further, alleges that Defendant Mason repeatedly called Ms. Fox a "tattletale", and that on or about, June 2011, Defendant Mason told Ms. Fox, "I need someone that I can trust and depend on, and not tell what is going on in my District! You are a tattletale…If you were anyone else or any other place, you'd be fired…whatever goes on in this District stays in this District, and not to the Board Members";.

f.  verbal threats regarding Ms. Fox's employment, in that Defendant, Mason, told Ms. Fox that, if word gets about Pat Brewer's misappropriation of funds, that Ms. Fox would be fired;

7

g.  other harassment and humiliation in that Defendants continued a pattern and practice of harassing and humiliating Ms. Fox by telling yelling privately and in the presence of other co-workers and telling co-workers of Ms. Fox could not add.

12.  Ms. Fox therefore, sought the assistance of the School Board President, Elliot Johnson (Mr. Johnson).   Mr. Johnson assured Ms. Fox that he would help her resolve the issues related the hostile and intimidating work environment.    Ms. Fox further alleges that instead of resolving her concerns, Mr. Johnson began making sexual advances towards Ms. Fox.

13.  Ms. Fox alleges that Mr. Johnson sexually harassed her with inappropriate actions which included, but is not limited to:

a.  unwelcomed touching of Ms. Fox's hands and thigh;

b.  frequent requests for dates and requests that she travel to his Chicago office and   with him to his apartment in D.C.;

c.  inappropriate text messages, one of which indicated that the two of them were destined to have a special relationship (See **Group Exhibit C**);

d.  lewd comments, in that Mr. Johnson commented to Ms. Fox about her lips and repeatedly told her that he wanted to kiss them and that when Ms. Fox tried to move away from him that he blocked her exit;   and that Mr. Johnson also told Ms. Fox that she was going to fall in love with him and that he is a patient man; that Mr. Johnson told Ms. Fox that although he has Lupus, that it would not interfere with his performance;

e. disrespectful comments about Ms. Fox's husband, in that Mr. Johnson commented about Ms. Fox's husband, by saying , that "I'm not worried about him, he's nothing, "I expected you to be married to someone like me, then he pulled out a stack of folded bills (folded with a money clip), and showed it to Ms. Fox.   Mr. Johnson then said, "if you ever need anything, I mean anything, let me know.   I need a woman like you to keep me in line."

f. frequent and repeated phone calls from Mr. Johnson to Ms. Fox asking her to spend time with him.

14.   Ms. Fox also alleges that Mr. Johnson told her that in order to address her concerns that he was going to have to move her to another location within the District, and that when she questioned why she was being punished, that Mr. Johnson told her that she would have to "just go with the flow."

15.   Ms. Fox refused the sexual advances of Mr. Johnson.

16.   Mr. Johnson did not move Ms. Fox to another location within the School District.

17.   Ms. Fox was subsequently terminated from her position as Payroll Clerk, on September 14, 2011.

## COUNT I

### SEXUAL DISCRIMINATION-RETALIATORY DISCHARGE

### TITLE VII

18.   At all times Ms. Fox refused sexual advances and Mr. Johnson.

19.   On about July 2011, Ms. Fox reported the sexual harassment to Defendants.

20.  On the aforesaid date, Defendant Mason told Ms. Fox, "get out of my office."

21.  At all relevant times, Ms. Fox reported said acts of harassment to Defendants and based on said information as reported to Defendants, Defendants should have recognized that she was being sexually harassed and said harassment would continue.

22.  Defendants took no action to deter, Mr. Johnson's sexual harassment of Ms. Fox.   At all times during her employment, Ms. Fox satisfactorily and ethically performed her duties and satisfied all reasonable expectations imposed upon her in connection with her employment.

23. Section 701, et seq., of the Civil Rights Act of 1964, 42U.S.C. par 2000e-2, provides for the following:

> (a.).  It shall be an unlawful employment practice for an employer
>
> > (1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; or
> >
> > (2)  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

24.  During her employment, with Defendants, Ms. Fox was the recipient of discriminatory treatments, due to her complaints to Mr. Johnson and Defendants, in violation of Title VII, 42 U.S.C. , par 2000 e-2, and Section 704 (a) et.seq. of the Civil Rights Act of 1964, in one or more of the following respects.

10

    a. Upon reporting said acts of sexual harassment, Ms. Fox was terminated from her position as Payroll Clerk for the School District and was not offered an alternative job in another part of the School District;

    b. Defendants knew or should have known that Ms. Fox was being sexually harassed, upon the reports from Ms. Fox and Defendants failed to take any action to deter and further/continued sexual harassment;

    c. Ms. Fox was denied the right to continue working for the School District and other opportunities at the School District, following her reporting of the ongoing sexual harassment.

    d. Ms. Fox was terminated from her position at the School District as a result of her reporting of the sexual harassment to Defendants.

25. The acts of discriminatory treatment by Defendants were motivated by Ms. Foxs reporting of sexual harassment by Mr. Johnson and were the result of a willful and intentional effort on the part of Defendants to discriminate against Ms. Fox, because of her reporting the ongoing sexual harassment.

26. Defendants discriminated against Ms. Fox with malice and with reckless indifference to the federally protected rights of Ms. Fox.

27. As a direct and proximate result of the discriminatory treatment by Defendant, Ms. Fox has suffered damages through loss of salary and other economic entitlements enjoyed by Ms. Fox prior to misconduct by Defendants.

28. As a direct and proximate result of the discriminatory treatment by Defendants, Ms. Fox has suffered emotionally and incurred damages as a result.

11

WHEREFORE, the Plaintiff, Traycee L. Fox, prays this Court enter judgment in her Favor and against Defendant, Elementary School District 159, and provide the following relief:

A. Assess in favor of Plaintiff, Traycee L. Fox, and against Defendant, Elementary School District, compensatory and exemplary damages as may be provided by law for the willful and intentional violations of the law committed by them.

B. Assess against the Defendant, Elementary School District 159, the costs and expenses incurred by the Plaintiff, Traycee L. Fox, in maintaining this proceeding together with the reasonable attorney's fees incurred by her in prosecution this cause; and,

C. Grant Plaintiff, Traycee L. Fox, any other such relief as this Court deems just an equitable.

## Count II

### Illinois Whistleblower Act

29. Count II seeks relief against defendants for the discharge of Ms. Fox based on her complaint to the School District about the apparent misappropriation of funds and other malfeasance.

30. Ms. Fox repeats paragraphs 18-22 of Count I as paragraphs 31-35 of this Count II.

36. Ms. Fox was at all times relevant an "employee" as defined in the Whistleblower Act.

37. Elementary School District 159, Defendant Mason and Defendant Ellington were at all times

12

relevant an "employer" as defined in the Whistleblower Act.

38.     The Whistleblower Act contains various prohibitions against retaliatory conduct.    The

        Act

states in part:

> Section 15. An employer may not retaliate against an employee for disclosing
> information to a government or law enforcement agency, where the employee has
> reasonable cause to believe that the information discloses a violation of a State or
> federal law, rule, or regulation.    740 ILCS 174/15.

> Sec. 20. Retaliation for certain refusals prohibited. An employer may not
> retaliate against an employee for refusing to participate in an activity that
> would result in a violation of a State or federal law, rule, or regulation,
> including, but not limited to, violations of the Freedom of Information Act.
> 740 ILCS 174/20.

> Sec. 20.1. Other retaliation. Any other act or omission not otherwise
> specifically set forth in this Act, whether within or without the workplace,
> also constitutes retaliation by an employer under this Act if the act or
> omission would be materially adverse to a reasonable employee and is
> because of the employee disclosing or attempting to disclose public
> corruption or wrongdoing. 740 ILCS 174/20.1

> Sec. 20.2. Threatening retaliation. An employer may not threaten any
> employee with any act or omission if that act or omission would
> constitute retaliation against the employee under this Act.
> (740 ILCS 174/20.2)

39.     Ms. Fox reasonably believed that the information she provided to the Defendant's

Mason, Ellington and Mr. Johnson disclosed a violation of a State or federal law, rule, or

regulation, moreover, Ms. Fox believed that her refusal to pay employees incorrect contract

13

and payroll amounts and endorse a check with the signature of a former employee, were justified, because she reasonably believed that engaging in such actions would have been a violation of State or federal law.

40.    Ms. Fox alleges that Defendants discharged Ms. Fox from her employment with the District, as a result the information that she provided to Defendants and Mr. Johnson and as a result of her refusal to engage in acts that Ms. Fox believed were a violation of State or federal law.

41.    As a result of the retaliatory discharge by Defendants, Ms. Fox suffered loss of wages, loss of other employment benefits, loss of employment, emotional distress, loss of job opportunities and was otherwise damaged.

**WHEREFORE**, Plaintiff, Traycee L. Fox prays that this Court:

A.    Reinstate her, or if reinstatement is not feasible, award her a reasonable amount of

front pay;

B.    Award her an amount equal to her lost wages and other lost benefits of employment;

C.    Award her compensatory damages in excess of $50,000;

D.    Award her punitive damages in excess of $1,000,000;

E.    Award her pre-judgment interest on all amounts awarded;

F.    Award her reasonable attorneys' fees;

G.    Grant such other relief as may be just and proper.

14

## COUNT III

### Common Law Retaliatory Discharge

42.  Count III seeks relief for Defendants' retaliatory discharge of Ms. Fox.

43.  Ms. Fox repeats paragraphs 18-22 of Count I as paragraphs 44-48 of this Count III.

49.  Ms. Fox was discharged by Defendants in retaliation for her efforts to further public policy by reporting what she reasonably believed to be wrongful and illegal conduct to Defendants, Mason and Ellington and Mr. Johnson.

50.  In so doing, Defendants acted with malice and in reckless disregard of the law.

51.  Public policy encourages employees to report unlawful conduct to a government or law enforcement agency.

52.  As a result of the retaliatory discharge by Defendants, Ms. Fox, suffered loss of wages, loss of other employment benefits, loss of employment, emotional distress, loss of job opportunities, and was otherwise damaged.

**WHEREFORE**, Plaintiff, Traycee L. Fox prays that this Court:

    A.    Reinstate her, or if reinstatement is not feasible, award her a reasonable amount of front pay;

    B.    Award her an amount equal to her lost wages and other lost benefits of employment;

    C.    Award her compensatory damages in excess of $50,000;

    D.    Award her punitive damages in excess of $1,000,000;

15

E.      Award her pre-judgment interest on all amounts awarded;

F.      Grant such other relief as may be just and proper.

## COUNT IV

### Tortious Interference with Business Relationship

53.   Count IV seeks relief for Defendant's retaliatory discharge of Ms. Fox.

54.   Ms. Fox repeats paragraphs 18-22 of Count I as paragraphs 55-59 of this Count IV.

60.   As a result of Ms. Fox's reporting of the continued sexual harassment, committed by

Mr. Johnson, upon Ms. Fox and her complaints regarding the apparent malfeasance, Ms. Fox

was caused to work in a hostile and intimidating work environment, and the same interfered

with Ms. Fox's ability to perform her job, and caused Ms. Fox to be thereafter, terminated

from her position with the School District.

61.   Defendants' and Mr. Johnson's interference with Ms. Fox's continued employment with

the School District was made as a personal vendetta.

62.   Defendant, Mason's and Defendant Ellington's continued interference with Ms. Fox's

employment with the School District was done willfully, intentionally and with reckless

disregard to the rights of Ms. Fox.

63.   As a direct and proximate result of the intentional interference with employment by

Defendant Mason and Defendant Ellington has suffered damages through loss of salary and

other economic entitlement enjoyed by Ms. Fox prior to the misconduct by Defendants

Mason, Ellington and Mr. Johnson.

A.      Reinstate Ms. Fox, or if reinstatement is not feasible, award her a reasonable

16

amount of front pay;

      B.     Award her an amount equal to her lost wages and other lost benefits of employment;

      C.     Award her compensatory damages in excess of $50,000;

      D.     Award her punitive damages in excess of $1,000,000;

      E.     Award her pre-judgment interest on all amounts awarded;

      F.     Award her reasonable attorneys' fees;

      G.     Grant such other relief as may be just and proper.

Respectfully submitted,

One of Plaintiff's Attorneys

The Law Offices of William D. Moore
William D. Moore, Esq.
16148 S. Kedzie Ave.
Markham, IL   60443
(708)-331-3555
(708)-268-3495
Attorney No.   6270300

## Verification

I declare under penalty of perjury that the foregoing statements made in the complaint are true
and correct, except as to those statements made upon information and/or belief.

Traycee L. Fox (signed)

# Exhibit A

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: **Traycee L. Fox**<br>6201 Great Plains Ave<br>Matteson, IL 60443 | From: **Chicago District Office**<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **21B-2011-02860** | **Armernola P. Smith,**<br>**State & Local Coordinator** | **(312) 869-8082** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| [X] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe/mjh*

**John P. Rowe,**
**District Director**

**May 4, 2012**

*(Date Mailed)*

Enclosures(s)

cc:

**SCHOOL DIST #159 MATTESON**
6202 Vollmer Road
Matteson, IL 60443

# EXHIBIT B

By Casey Toner

ctoner@southtownstar.com

Last Modified: Mar 21, 2012 08:00AM

A former payroll clerk in Matteson-based School District 159 was receiving multiple checks on payday and was issued a check for more than $15,000 just weeks before she was fired, according to payroll records obtained by the SouthtownStar.

Her son also received more money than his job as a substitute teacher called for, records show.

All told, about $32,000 was paid to Patricia Brewer, of Matteson, and her son Michael Brewer for work the district cannot account for before, records show. Neither has been charged with a crime. The school board fired them in June 2010, records show.

District 159 Board President Elliot Johnson criticized how District 159 Supt. Barbara Mason and business manager Melody Ellington handled the matter. Johnson said he felt they did not take swift enough action.

"What I am is very disappointed that our superintendent and business manager didn't address it with a sense of urgency, considering the fact that it was obvious that it transpired," Johnson said. "They think $30,000 isn't a big deal. They act like it's three dollars."

Johnson, who also is a Rich Township trustee, said he met Feb. 10 with Cook County state's attorney's office investigators in response to a SouthtownStar inquiry.

The school board agreed at a special meeting on Monday to give the information to the state's attorney's office.

"What took a year-plus to not be able to get, they will get in a week," Johnson said.

Mason said the state's attorney's office and Illinois attorney general's office already were investigating before Johnson met with them on Feb. 10. She declined to comment on Johnson's assertion that investigators were upset about the delay in providing paperwork. Ellington did not respond to multiple messages.

Patricia Brewer received two checks every payday from October 2009 through December 2009

totaling about $7,200, according to payroll and check records obtained by the SouthtownStar. She also was cut a check for $15,500 from the district weeks before she was fired.

Reached at her house in Matteson, Patricia Brewer couldn't explain the expenses.

"There's a lot of animosity in the district and I don't know what's going on," Brewer said. "Every penny I've got, they gave me."

Patricia's son, Michael, worked as a substitute teacher at the district, working two days in November 2009 and May 2010, according to substitute payroll records.

The pay schedule called for him to earn $190 for those days, but the district's report on checks issued shows he was paid about $9,500.

"I don't even remember that," Michael Brewer said. "I'm a full-time employee at Ford now and I don't remember back then. I don't know what they're talking about."

The Brewers have had money issues in the past, with each declaring bankruptcy in 1998, court records show. Michael filed for his second bankruptcy in 2005, claiming that he owed creditors nearly $194,000 while he had about $300 in his checking account.

The district tapped Patricia Brewer to be a temporary payroll clerk in February 2009, records show. She became a full-time payroll clerk in July 2009 and later was promoted to be former Supt. Ronald Wynn's secretary. District 159 human resources director Sonya Norwood, who also is a Rich Township High School District 227 board member, said Michael Brewer had no other district job that would warrant the amount he was paid.

"That's amazing, but people do crazy stuff," Norwood said. "I don't understand why they do it, but they do, and they get caught."

Contributing: Lauren Fitzpatrick

Copyright © 2012 — Sun-Times Media, LLC

# **GROUP EXHIBIT C**







Traycee Fox Sent from my iPad

